IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**ELIZABETH STANDLEE,**

       **Plaintiff,**

vs.                                                                                         No.  03cv0190 DJS

**JO ANNE B. BARNHART,**
**COMMISSIONER OF SOCIAL SECURITY,**

       **Defendant.**

## MEMORANDUM OPINION

This matter is before the Court on Plaintiff's (Standlee's) Motion to Reverse or Remand Administrative Agency Decision **[Doc. No. 9]**, filed September 5, 2003, and fully briefed on December 2, 2003.  On May 20, 2002, the Commissioner of Social Security issued a final decision denying Standlee's claim for disability insurance benefits and supplemental security income benefits.  Having considered the arguments, pleadings, administrative record, relevant law, and being otherwise fully informed, the Court finds the motion to reverse is not well taken and will be DENIED.

### I.  Factual and Procedural Background

Standlee, now thirty-seven years old, filed her application for disability insurance benefits and supplemental security income benefits on July 19, 2001, alleging disability since March 14, 2001, due to neck and shoulder strain, left shoulder tendonitis, and right wrist injury.  Tr. 17. Standlee has a high school education and past relevant work as a legal clerk, school secretary, educational assistant, and dining room supervisor.  Tr. 21.  On September 5, 2001, the

Commissioner's Administrative Law Judge (ALJ) denied benefits, finding that Standlee "had 'severe' impairments, consisting of a neck and shoulder strain, left shoulder tendonitis, and a right wrist injury." Tr. 17. The ALJ further found Standlee's impairments were not severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. Tr. 17-18. Therefore, the ALJ found Standlee retained the residual functional capacity (RFC) "to perform basic light work activities." Tr. 21. As to her credibility, the ALJ found Standlee's "testimony and other evidence do not credibly establish functional limitations to the extent alleged." Tr. 18. Standlee filed a Request for Review of the decision by the Appeals Council. On January 10, 2003, the Appeals Council denied Standlee's request for review of the ALJ's decision. Hence, the decision of the ALJ became the final decision of the Commissioner for judicial review purposes. Standlee seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

## II. Standard of Review

The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether he applied correct legal standards. *Hamilton v. Secretary of Health and Human Services,* 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Moreover, "all of the ALJ's required findings must be supported by substantial evidence," *Haddock v. Apfel,* 196 F.3d 1084, 1088 (10th Cir. 1999), and all of the relevant medical evidence

2

of record must be considered in making those findings, *see Baker v. Bowen*, 886 F.2d 289, 291 (10th Cir. 1989).  "[I]n addition to discussing the evidence supporting his decision, the ALJ must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."  *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996).  Therefore, while the Court does not reweigh the evidence or try the issues de novo, *see Sisco v. United States Dep't of Health & Human Servs.*, 10 F.3d 739, 741 (10th Cir. 1993), the Court must meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings, in order to determine if the substantiality test has been met.  *See Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994).

### III.  Discussion

In order to qualify for disability insurance benefits or supplemental security income, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity.  *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993)(citing 42 U.S.C. §423(d)(1)(A)).  The regulations of the Social Security Administration require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications.  20 C.F.R. § 404.1520 (a-f).  The sequential evaluation process ends if, at any step, the Commissioner finds the claimant is not disabled.  *Thompson*, 987 F.2d at 1487.

At the first four levels of the sequential evaluation process, the claimant must show she is not engaged in substantial gainful employment, she has an impairment or combination of impairments severe enough to limit her ability to do basic work activities, and her impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20

C.F.R. Part 404, Subpt. P, App. 1, or she is unable to perform work she had done in the past. 20 C.F.R. §§ 404.1520 and 416.920.  At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the claimant is able to perform other substantial gainful activity considering her residual functional capacity, age, education, and prior work experience. *Id.*

In support of her motion to reverse, Standlee makes the following arguments: (1) the ALJ's RFC assessment is not supported by substantial evidence because it ignores evidence that would have diminished her RFC below sedentary work and because it does not comply with Social Security Ruling 96-8p; (2) the vocational testimony of record lacks substantial evidence because the ALJ made several errors at step-five and failed to fulfill his duty, requiring a remand for a new assessment; and (3) the ALJ's credibility assessment is unsupported by substantial evidence and does not comply with Social Security Ruling 96-7p when the medical evidence demonstrated her pain complaints to be accurate and supported, and the ALJ failed in his duty under Social Security Ruling 00-4p.  Mem. Supp. of Mot. to Reverse at 1-2.

**A.  Residual Functional Capacity Determination**

"[T]he responsibility for deciding [a claimant's] residual functional capacity rests with the Administrative Law Judge . . . ."  20 C.F.R. §§ 404.1546 & 416.946.   Residual functional capacity is defined as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirement of jobs."  20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(c).  In arriving at an RFC, agency rulings require an ALJ to provide a "narrative discussion describing how the evidence supports" his or her conclusion.  *See* SSR 96-8p, 1996 WL 374184, at *7.  The ALJ must "discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis . . . and describe the

maximum amount of each work-related activity the individual can perform based on the evidence available in the case record." *Id.* The ALJ must also explain how "any material inconsistencies or ambiguities in the case record were considered and resolved." *Id.* "The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." *Id.*

The ALJ found Standlee "retain[ed] the capacity to do a limited range of light work." Tr. 20. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [Standlee] must have the ability to do substantially all of these activities. 20 C.F.R. § 416.967(b). Specifically, the ALJ found:

> [Dr. Ronald Takemoto] consistently, and as recent as March 25, 2002, released her to light duty work, <u>with a restriction of no repetitive use of the left upper extremity</u>. On April 4, 2002, Dr. Takemoto completed a medical assessment of the claimant's ability to work, showing that she could lift in the 10 to 20 pound range, sit, stand and walk up to six hours each in a workday, and <u>use her hands for simple grasping and fine manipulation</u>. He said she was <u>limited in her ability to push or pull with her left upper extremity</u> (Exhibits 2F:12-15; 3F, 8F; 10F).
>
> On June 13, 2001, the claimant underwent a formal functional capacity assessment, which showed that she was capable of handling up to 20 pounds occasionally with restrictions for <u>no repetitive grasping, lifting, reaching or pushing/pulling with her dominant right arm</u>. The therapist who performed the evaluation, Ms. Theresa Barton, concluded that the estimated <u>physical demand characteristics of her demonstrated work level was light, with the above-noted restrictions</u>. Ms. Barton also estimated that the claimant could sit, stand and walk six to seven hours each in a regular work day, could frequently bend, squat, climb stairs, and reach below the shoulders, and <u>could use her hands for simple grasping and fine manipulations</u> (Exhibit 2F:1-11).
>
> \* \* \* \* \* \* \* \* \* \*
>
> After reviewing the claimant's medical record, symptoms, and complaints in the (sic) light of 20 C.F.R. 404.1529 and 416.929, <u>I find that she indeed has 'severe' impairments, but</u>

<u>her overall condition does not preclude her from performing a limited range of light work activity</u>.  Radiographic examinations have either been normal or shown relatively mild to moderate findings, including x-rays and MRI scans of the left shoulder, right elbow and wrist, and cervical spine (Exhibits 1F;71; 2F:15; 3F:8/25/45).  Physical examinations have been generally unremarkable <u>except for reduced strength and range of motion in the upper extremities</u> (Exhibits 1F:17-19/34-35/65-67).  <u>A functional capacity assessment in June 2001 determined that the claimant was able to perform light work activity with restricted use of her upper extremities for repetitive movements</u> (Exhibit 2F).  Dr. McGinty concurred with these findings and assigned a 28% impairment rating to her right upper extremity condition.  She concluded that the claimant could not do her previous work because of its requirements for repetitive motions (Exhibits 1F:2-3; 7F; 9F).  <u>Dr. Takemoto consistently noted that the claimant could do light level work that did not require repetitive actions with the left upper extremity</u> (Exhibits 3F; 8F; 10F).  <u>The overall medical record is persuasive that the claimant retains the capability to do a limited range of light work.</u>

\* \* \* \* \* \* \* \* \* \*

<u>The Administration's program physicians previously reviewed the evidence of record and concluded that the claimant retained the physical capability to perform light work activity that did not require repetitive use of her arms</u> (Exhibits 1B; 3B; 4F; 5F).  Under the provisions of Social Security Ruling 96-6p, I have considered these professional medical opinions, <u>and I essentially concur with them</u>.  20 C.F.R. §§1567 and 416.967 define light work as lifting a maximum of 20 pounds occasionally and 10 frequently.  Light work requires considerable standing and walking, or sitting with some pushing and pulling of arm and leg controls.  Ms. Standlee said several times in the record that she could lift up to 20 pounds (Exhibits 3E:2; 6E:1).  As noted, several of her treating physicians and a functional capacities assessment concluded that she was capable of performing the sitting, standing, and walking requirements of light work.  I find that the claimant retains the capability to perform basic light work activities.

Ms. Standlee is currently 35 years of age and was 34 years old at the time of her alleged disability onset.  She is considered a younger individual during times at issue in these claims.  She has a high school education (Exhibit 3E:8).  She worked in the past as a legal clerk, school secretary, educational assistant, waitress, and restaurant hostess.  **She described these jobs as medium in exertional requirements** (Exhibits 3E:3; 4E).  Based on my residual functional capacity finding for a limited range of light level work, the claimant would not likely be able to perform any of her previous jobs.  This being the case, the burden of proof shifts to the Commissioner to show that the claimant could have performed other jobs in the economy after her alleged onset of disability.

In order to determine the claimant's ability to do other work in the economy I secured the testimony of Ms. Judith Beard, a vocational expert who was present at the hearing and reviewed the claimant's vocational history.  Posing a hypothetical question, I asked Ms. Beard to assume an individual of the claimant's age, education, and previous work background, with a residual functional capacity for doing a limited range of light work.  Specifically, I hypothesized that his individual could lift 10 pounds frequently and slightly more than that occasionally, and could stand/walk up [to] six hours in an eight-hour day, but would require the option to alternate sitting and standing at will.  In addition, I

6

> hypothesized that this person could only occasionally perform such postural maneuvers as stooping, crouching, climbing and crawling, <u>but could not do continuous repetitive movements with the upper extremities.</u> I asked if there were jobs available in the economy which this hypothetical individual could perform. Ms. Beard named the following occupations, giving their identification codes from the Dictionary of Occupational Titles (DOT), their exertional and skill levels, and their approximate numbers in the regional and national economy.

Tr. 19-21 (emphasis added). The ALJ also posed the following hypothetical question to the VE.

> Q: Having said that, I would like you to assume an individual who alleges an onset of disability at age 34. She is currently 35. She has a high school education. Her past relevant work history is noted in Exhibits 3-E, 4-E, 8-E, and as she testified here to this day. For purposes of my first hypothetical, I would like you to assume this individual could lift and carry 20 pounds occasionally and ten pounds frequently, occasionally climb, balance, stoop, kneel, crouch, and crawl. And I would impose another requirement, that she should perform no repetitive, constant grasping, lifting, or reaching overhead or very forceful pushing or pulling with her dominant right upper extremity. And she would be limited to stamping, stapling, or collating no more than one hour per day. And withing the confines of that one, I just want to add one more thing to it. As of 5-7-01, her right grip strength would be 31 pounds per square inch. Within the confines of that, my first hypothetical, could the claimant return to any of her past relevant work as she performed it or as it would be performed within the national economy?

Tr. 61-62. Standlee contends the ALJ's RFC assessment "is not inclusive of those severe restrictions in no reaching, grasping, or repetitive use of the upper extremities as found by treating physicians Dr. McGinty and Dr. Takemoto." Mem. Supp. Mot. to Reverse at 14. The Court disagrees. Although the ALJ did not explicitly state that he included these limitations in his RFC determination, his decision and his hypothetical question to the VE indicate he included these restrictions. Additionally, the ALJ considered Standlee's medical history, her activities of daily living, her mother's testimony, the agency physicians' RFC assessments, and her treating physicians' opinions as to her limitations and restrictions. "[T]he form of words should not obscure the substance of what the ALJ actually did." *Doyle v. Barnhart*, 331 F.3d 758, 761 (10th

Cir. 2003). Accordingly, the Court finds that the ALJ complied with Social Security Ruling 96-8p, and his RFC determination is supported by substantial evidence.

Next, Standlee argues the ALJ erroneously relied on the VE's testimony that she could perform the jobs of case aide, research assistant, and information clerk. Standlee claims these jobs are "nearly identical" to her Court Clerk II position. According to Standlee, the job of Court Clerk II required extensive hand, arm, and wrist movements. Standlee also contends her physician opined she could no longer perform the job of Court Clerk II. A review of the Dictionary of Occupational Titles (DOT) job descriptions for the jobs of case aide, research assistant, and information clerk does not support Standlee's argument. The job of research assistant requires occasional reaching and fingering and frequent handling. Def.'s Ex. 1 (DOT Job Description No. 199.267-034). The jobs of case aide and information clerk require only occasional handling, reaching and fingering. *Id.* (DOT Job Description Nos. 195.367-010 and 237.377-022, respectively). Even if the Court were to eliminate the job of research assistant because it requires frequent handling, a significant number of case aide and information clerk jobs exist to satisfy the Commissioner's burden at step five of the sequential evaluation process.

Standlee also claims the DOT classifies her past work as a Court Clerk II as sedentary. Therefore, she argues that because she can no longer perform her past work as a Court Clerk II which is classified as sedentary, the ALJ erred in finding she retained the RFC to perform jobs that required greater exertional strength demands than her past work. The Court disagrees. As the ALJ noted in his decision, Standlee described her job **as she performed it** as medium in exertional requirements. Tr. 21, Tr. 111 (description of her Court Clerk II position as she

8

performed it). Accordingly, the ALJ found Standlee could not perform any of her previous jobs due to his RFC finding that she could perform a limited range of light level work. Tr. 21.

Finally, Standlee contends she "obtained new and material VE testimony that substantiates [her] inability to engage in substantial gainful activity." Pl.'s Mem. Supp. Mot. to Reverse at 22. The "new and material" evidence is a report from Ken L. Williams, a vocational consultant, submitted for the first time on appeal to the Court. On judicial review of a Commissioner's decision, a court is generally confined to the record before it. *Carrillo v. Barnhart,* 79 Fed.Appx. 395, 396 (10th Cir. October 24, 2003). However, "[i]f new evidence is presented directly to a reviewing court, the court may remand to the Commissioner only if the evidence is material and the claimant shows 'good cause for the failure to incorporate such evidence into the record in a prior proceeding'" *Johnson v. Apfel*, No. 00-6064, 2000 WL 1246214, \*\*2 (10th Cir. Sept. 19, 2000)(unpublished disposition). A remand is warranted if the Court determines the new evidence would have changed the [Commissioner's] decision had it been before him. *Hargis v. Sullivan*, 945 F.2d 1482, 1493 (10th Cir. 1991). Implicit in this requirement is that the proffered evidence relate to the time period for which the benefits were denied. *Id.*

Mr. Williams completed his report on **May 14, 2003**, opining Standlee was disabled. Pl.'s Ex. B. The ALJ filed his decision on **May 20, 2002**. Mr. Williams relied, *inter alia*, on an interview with Standlee, testing he performed during the interview, medical reports in the administrative file, Dr. George Swajian's **October 24, 2002** report, and Dr. Takemoto **May 6, 2003** Medical Assessment of Ability to Do Work Related Activities (Physical) form.

In this case, Mr. Williams' report is dated <u>almost one year after the ALJ's decision</u>. In reaching his conclusion of disability, Mr. Williams relied on a medical report from George

9

Swajian, D.O., dated **October 24, 2002** and Dr. Takemoto's Medical Assessment of Ability to Do Work Related Activities (Physical) form dated **May 6, 2003**, both performed after the ALJ's decision.  Mr. Williams' evaluation does not meet the requirements set forth in 42 U.S.C. § 405(g).  Standlee has not shown good cause why she did not obtain this report prior to the administrative hearing.  In addition, Mr. Williams concluded Standlee "ha[d] lost 100 percent of the competitive labor market, and ha[d] sustained this loss since the date of the injury, November 12, 1999."  Pl.'s Ex. B (emphasis added).  However, this conclusion is contrary to Standlee's testimony that she returned to her job on "light duty" from December 1999 to March 14, 2001 (Tr. 38), and contrary to her treating physicians' medical reports and opinions stating Standlee could work at a light duty level.  Tr. 38.  Accordingly, the Court finds that this "new evidence" does not warrant a remand, and the Court will not consider it.

However, although Dr. Swajian's report was not before the ALJ, it was before the Appeals Council.  Tr. 6.  Therefore, the Court must consider it when evaluating the Commissioner's decision for substantial evidence.  *See, O'Dell v. Shalala*, 44 F.3d 855, 859 (10th Cir. 1994)(new evidence presented to the Appeals Council becomes part of the administrative record to be considered by the Court when evaluating the Commissioner's decision for substantial evidence).

The Court has considered Dr. Swajian's report and finds that, based on the record as a whole, the ALJ's determination that Standlee was not disabled is supported by substantial evidence.  Dr. Swajian's conclusions rely in part on conditions not present to the degree alleged at the time of the ALJ's decision.  Dr. Swajian noted, "[Standlee] is somewhat concerned that in the past two months pain has been noted in the right knee extending down the lateral aspect of the

right leg with paresthesia of the first toe." Tr. 375 (emphasis added). Dr. Swajian also noted, "She also states that <u>in the past two months</u> the paresthesia and pain in her right lower leg has also become constant." *Id.* (emphasis added). Moreover, after setting forth a list of differential diagnoses, Dr. Swajian's opined, "With all of these **potential problems** existing, I feel this patient is totally incapable of working in any capacity especially **if the majority of my clinical findings are verified by empirical testing**." Tr. 378 (emphasis added). Dr. Swajian evaluated Standlee's condition several months after the ALJ's decision and may tend to show Standlee's condition had worsened, but it does not establish that she was disabled at the relevant time. *Johnson*, 2000 WL 1346214 at *3; *see also Sancez v. Secretary of Health & Human Servs.,* 812 F.2d 509, 512 (9th Cir. 1987)(stating that new evidence indicating deterioration after the hearing would be material to a new application, but is not probative of claimant's condition at the time of the hearing).

Moreover, under the regulations, Dr. Swajian is not considered a treating physician and is thus not entitled to the sort of deferential treatment accorded to a treating physician's opinion. *See Reid v. Chater*, 71 F.3d 372, 374 (10th Cir. 1995). The ALJ relied on Standlee's treating physicians' medical records and their opinions, and they <u>do not</u> support a finding of disability. Those records indicate as follows:

On March 25, 2002, Dr. Ronald Takemoto, a Board Certified Physiatrist,[1] noted, "She remains at her light duty work status regarding this injury. There is no change in her previous Maximum Medical Improvement status." Tr. 344, 348; *see also* Tr. 345, 349 (February 25, 2002– remains at her previous light duty work status).

---

[1] A physiatrist is a physician who specializes in physical medicine. *Stedman's Medical Dictionary* 1362 (26th ed. 1995).

11

On March 20, 2001, Dr. McGinty, a specialist and treating physician, opined Standlee could do "long-hand writing four hours a day" and "could work eight hours." Tr. 190.

On June 13, 2001, Theresa Barton, a licensed physical therapist, performed a functional capacity assessment. Tr. 263-273. Ms. Barton noted Standlee put forth "close to" maximum effort and displayed "symptom magnification." Tr. 265. Ms. Barton opined Standlee could sit, stand, and walk for 6 to 7 hours in a workday, and occasionally lift and carry up to 20 pounds. Tr 264. Specifically, Ms. Barton found:

> Ms. Standlee put forth close to maximum effort in testing with symptom magnification noted in some of her pain behaviors, particularly during the clinical evaluation. <u>Estimated physical demand characteristics of work level is **Light** for handling up to 20 pounds occasionally (16 times per day) with restrictions for repetitive grasping, lifting, reaching, or forceful pushing and pulling with her dominant right arm</u>. She also continues to report limitations related to her left shoulder. Based on her description of the frequency of repetitive tasks required in her job and a description of her job received with referral, Ms. Standlee would not be safe returning to her job as Court Clerk II.

Tr. 266 (emphasis added).

On July 10, 2001, Dr. McGinty evaluated Standlee and assigned her a final impairment rating. Tr. 160-161. Dr. McGinty reviewed Ms. Barton's RFC assessment and concurred with the restrictions imposed by Ms. Barton. Dr. McGinty noted that "[Standlee] put forth <u>close</u> to maximal effort and testing with <u>symptom magnification</u> noted in some of her pain behaviors particularly during the clinical evaluation." Tr. 160 (emphasis added). Dr. McGinty found "the estimated physical demand characteristics of [Standlee's] work level is light for handling up to 20 pounds occasionally 16 times per day with restrictions for no repetitive grasping, lifting, reaching or forceful pushing and pulling with her dominant right arm." *Id.* Dr. McGinty concluded her evaluation with a recommendation that Standlee return on a "p.r.n. (as needed) basis." Tr. 161.

12

On September 24, 2001, Dr. Takemoto completed an RFC assessment and opined Standlee could return to work at the light work exertional level. Tr. 279-280. However, Dr. Takemoto restricted Standlee to no repetitive grasping, lifting, reaching, or pushing and pulling. *Id., see also,* Tr. 346, 350 ( December 24, 2001 medical note from Dr. Takemoto noting, "She remains at her previous work duty status of light work."); Tr. 325 (March 13, 2000 medical note from Dr. Pamela Black, an associate of Dr. Takemoto, noting, "The patient may return to work with her permanent restrictions."); Tr. 307 (February 1, 2001 medical report from Dr. Takemoto noting, "The patient remains at her previous light-duty work status."); Tr. 306 (February 16, 2001 medical report from Dr. Takemoto noting, "She remains at a light-duty work status, and should not pull files for the next two weeks."); Tr. 300 (March 2, 2001 medical report from Dr. Takemoto noting, "She remains at a ligh-duty work status, with limited use of the left arm."); Tr. 298 (March 16 2001 medical report from Dr. Takemoto noting, "She remains at light-duty work regarding this injury."); Tr. 295 (April 2, 2001 medical report from Dr. Takemoto noting, "She remains on light-duty work regarding this injury."). Tr. 321 (May 3, 2000 medical note from Dr. Black  noting, "The patient may return to work with her previous restrictions."); Tr. 320 (May 10, 2000 medical note from Dr. Black noting, "Patient may return to work with her previous restrictions."); Tr. 318 (June 2, 2000 medical note from Dr. Black noting, "Patient may return to work with her previous restrictions."); Tr. 315 (June 16, 2000 medical report from Dr. Black noting, "The patient may return to work with her previous restrictions."); Tr. 314 (July 5, 2000 medical report from Dr. Takemoto noting, "She will remain at a full duty work status."); Tr. 312 ( August 9, 2000 medical report from Dr. Takemoto noting, "The patient will continue at her full duty work status.");

On October 4, 2001, an agency non-examining consultant reviewed the medical records and completed an RFC assessment form. Tr. 328-335.  The physician opined Standlee retained the RFC to perform light work but noted "repetitive motions with the left upper extremity should be avoided due to tendonitis and pain."  Tr. 331.  The physician also referred to the restrictions imposed by Standlee's physicians.  Tr. 329.

On April 4, 2002, Dr. Takemoto submitted a Medical Assessment of Ability To Do Work-Related Activities (Physical).  Tr. 359.  Dr. Takemoto opined Standlee could occasionally lift less than 20 pounds, frequently lift less than 10 pounds, stand and walk about 6 hours in an eight hour workday; could use her hands for repetitive actions in simple grasping/pushing and fine manipulating, could sit about 6 hours in an eight hour workday, and had limited use of her left upper extremity in pushing and pulling and manipulation.  *Id.*

Based on the foregoing, the Court finds that the ALJ's RFC determination and his finding of nondisability are supported by substantial evidence.

**B.  Credibility Determination**

Standlee contends the ALJ's credibility determination is not supported by substantial evidence.  "Credibility determinations are peculiarly the province of the finder of fact and will not be upset when supported by substantial evidence."  *Diaz v. Secretary of Health and Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990).  "Findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings."  *Huston v. Bowen,* 838 F.2d 1125, 1133 (10th Cir. 1988).  However, the ALJ's credibility determination does not require a formalistic factor-by-factor recitation of the evidence.  *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).  The ALJ need only set forth the specific evidence he relies on in evaluating claimant's credibility.  *Id.*  The ALJ may also consider his personal observations of the claimant in his overall evaluation of the claimant's credibility.  *Id.*

> In his decision, the ALJ noted,
>
> The claimant has symptoms-producing medical problems, but I find that her testimony and other evidence do not credibly establish functional limitations to the extent alleged.  She stated in the record that she cannot work because of tendonitis in her left shoulder and a back impairment.  Her list of symptoms and disabling limitations included pain in her arms, shoulders, neck, and back, an inability to lift over 20 pounds or do repetitive work with her upper extremities, and restricted movement and functioning in both arms.  She also complained of suffering from asthma, acid reflux disease, and carpal tunnel syndrome (Exhibits 2B; 2E; 3E;2; 6E; 8E:1).  The claimant testified at the hearing that she has constant pain in her right hand and wrist in spite of medication and therapy.  She relies on her husband and children to assist with tasks that require use of her right upper extremity.  She estimated that at most she can lift only 10 pounds, stand for 20 to 30 minutes, sit for 10 to 15 minutes, and walk one block.

Tr. 18.  The ALJ then set forth the medical evidence that contradicted her allegations of disabling limitations.  The ALJ found:

> The medical records show that the claimant sustained injuries to her neck, left shoulder and right wrist in a work-related accident on November 1, 1999.  She initially sought treatment from her primary care physician, Dr. Jerome Snyder, for right wrist pain and tendonitis in

15

her left shoulder. She participated in physical therapy and in March 2000 was given a 7% whole person impairment rating. In August 2000, Dr. Snyder referred her to Dr. Laurel McGinty, a specialist in the hand clinic at Lovelace Health Systems. Based on an earlier MRI examination, Dr. McGinty noted that the claimant had a congenital deformity in her right wrist, as well as soft tissue injuries likely due to her accidental fall the previous November. On examination, Dr. McGinty reported that the claimant had relatively normal upper extremities. She had tenderness and partially limited movement in the wrist, but she had full range of motion in the right hand and the rest of her upper extremities, and she was neurovascularly and neurologically intact. Dr. McGinty diagnosed a congenital deformity and a probable triangular fibrocartilage tear and recommended an arthrogram. The arthrogram was performed on August 29, 2000 and confirmed a Madelung's deformity of the right wrist but did not show the triangular fibrocartilage tear that Dr. McGinty suspected. The claimant participated in physical therapy, which provided only temporary pain relief (Exhibit 1F:62-104).

On November 20, 2000, Dr. McGinty performed an ulnar shortening osteotomy on the claimant's right upper extremity. Subsequent progress notes indicated that the surgery went well. On December 19, 2000, Dr. McGinty reported that she had no complaints. She had excellent finger motion in the right hand and minimal tenderness at the incision site. She had returned to work at light duty. Dr. McGinty sent her for more physical therapy, which improved her strength and range of motion in the right wrist. Dr. McGinty observed during a visit on February 27, 2001, that her wrist mobility was greatly improved and her strength was continuing to improve rather dramatically. On March 20, 2001, Dr. McGinty said she could work eight hours a day and do long-hand writing for four hours, but could not engage in repetitive use of either hand, secondary to pain in both of her shoulders. She participated in more physical therapy and continued to make gains in range of motion and strength in her right upper extremity. Her therapist reported on May 7, 2001, that she was making good progress and her grip strength and right forearm rotation had improved. On July 10 2001, Dr. McGinty concluded that the claimant had reached maximum medical improvement with respect to her right upper extremity and assigned a 28% impairment rating (Exhibit 1F:2-61).

In addition to her right upper extremity problems, Ms. Standlee also sustained an injury to her left shoulder when she fell in November 1999. This was later aggravated by overuse when she returned to light duty work. She saw Dr. Anthony Pachelli on May 30, 2001, who noted that a previous MRI examination had shown a small subchondral cyst in the shoulder, which he did not feel was contributing to the claimant's allegation of pain and stiffness. X-rays of the shoulder were normal. Dr. Pachelli attributed her symptoms to tendonitis and made no particular treatment recommendations. The physician who provided treatment for the claimant's left shoulder complaints, Dr. Ronald Takemoto, administered injections and sent the claimant for physical therapy. He consistently, and as recently as March 2002, released her to light duty work, with a restriction of no repetitive use of the left upper extremity. On April 4, 2002, Dr. Takemoto completed a medical assessment of the claimant's ability to work, showing that she could lift in the 10 to 20 pound range, sit, stand and walk up to six hours each in a workday, and use her hands for simple grasping and fine manipulation. he said she was limited in her ability to push or pull with her left upper extremity (Exhibits 2F:12-15; 3F; 8F; 10F).

>                     * * * * * * * * * *
> The claimant's treatment regiment has been largely successful.  <u>Her right wrist surgery and subsequent therapy sessions produced significant improvement in range of motion and strength in her right upper extremity</u>.  She has continued to complain of pain in her upper extremities, but **her allegations are not entirely credible or consistent with the objective medical findings**.  Of note also is the observation of Ms. Barton, the therapist who performed the claimant's functional capacity assessment in June 2001.  <u>Ms. Barton noted symptom magnification in pain behaviors involving the left shoulder and upper back</u> (Exhibit 2F:4/7).
>
> On her treatment regimen, the claimant is able to maintain a lifestyle that I find essentially consistent with a limited range of light work activity.  When she filed her application for benefits, she completed a daily activities questionnaire showing that she lived in a house with her husband and three children, as well as another family of four.  <u>She said she did a full range of household chores, including cooking, cleaning, and laundry, took her children to and from school and recreational activities, participated in family gatherings, walked on a regular basis every day, and watched television in her spare time</u> (Exhibit 1E).  At the hearing, the claimant testified that she could only sit for 10 to 15 minutes at a time.  However, <u>she had no problem sitting through the hearing, which lasted nearly an hour</u>.  Dr. Takemoto and Ms. Barton both concluded that <u>she was capable of sitting, standing and walking up to six hours in an eight-hour day</u> (Exhibits 2F:2; 10F).

Tr. 18-21 (emphasis added).  Therefore, the Court finds that the ALJ set forth the specific evidence he relied on in evaluating Standlee's credibility.  Because subjective complaints must be evaluated in light of a claimant's credibility as well as the medical evidence, the Court finds the ALJ's credibility determination was proper and supported by substantial evidence.  Accordingly, the Court will not upset an ALJ's credibility determination where, as here, it is supported by substantial evidence.

**C.  Conclusion**

The Court's review of the ALJ's decision, the record, and the applicable law indicates the ALJ's decision adheres to applicable legal standards and is supported by substantial evidence. The ALJ's finding that Standlee was not disabled is supported by substantial evidence. Accordingly, the ALJ's decision is affirmed.

A judgment in accordance with this Memorandum Opinion will be entered.

 

**DON J. SVET**
**UNITED STATES MAGISTRATE JUDGE**